UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JOHN ALSTON,

            Petitioner,

            V.

JAMES CONWAY,

            Respondent.
_____

**REPORT AND RECOMMENDATION**

03-CV-1528

## I. INTRODUCTION

Petitioner John Alston, acting *pro se*, commenced this action seeking habeas corpus relief under 28 U.S.C. § 2254. Petitioner is an inmate at the Sing Sing Correctional Facility. In 1998, he was convicted in a New York State court of Murder in the Second Degree and was sentenced to a term of imprisonment. Petitioner contends that his conviction was imposed in violation of his constitutional rights and should therefore be vacated.

This matter was referred to the undersigned by the Honorable Norman A. Mordue, Chief United States District Judge, pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), and is presently before this Court for a report and recommendation. (Docket No. 10).

## II. BACKGROUND

**A.   Facts**

The following factual summary is derived from the state court records. On April 19, 1997, Petitioner, also known as "Baby John", observed his girlfriend, Latonya Norwood ("Norwood"), driving in a vehicle with Tyrone Germany ("Germany"). (T at 458). Norwood

and Petitioner had a child together. (T at 462). Petitioner confronted Germany at that time and the two began a verbal argument. Petitioner's brother stopped the fight before it became physical. (T at 458-62).

The next day, April 20, 1997, Petitioner saw Germany again. (T at 466). Petitioner testified at trial that Germany came up to his car and stuck his hand through the window. (T at 466). Petitioner then decided that an altercation was inevitable, so he exited his car over and the two began to fist fight. (T at 468-69). Petitioner was thrown to the ground and beaten by Germany. (T at 102, 469). By that time, a crowd of onlookers gathered. (T at 128, 470). According to eyewitness testimony, when the fight appeared to be over, Petitioner took a gun offered to him by a friend[1] and shot and killed Germany as he attempted to escape. (T at 64, 67, 103, 130, 472-73). Petitioner shot Germany five times in the back, fired into the crowd,[2] and then drove away. (T at 68-69, 131, 477). Petitioner was later arrested in New York City by the Albany Police.

On April 29, 1997, an Albany County Grand Jury returned an indictment, which charged Petitioner with two counts of Murder in the Second Degree, in violation of New York Penal Law ("NYPL") §125.25(1)(intentional murder) and §125.25(2)(depraved indifference);[3] Attempted Murder in the Second Degree, in violation of NYPL §110, as further defined in §125.25(1) and; Reckless Endangerment in the First Degree, in violation

---

[1] Petitioner's "friend" was later identified as Germaill McKnight, also known as "Shorty". For his part in the murder of Tyrone Germany, McKnight was convicted of Murder in the Second Degree and Criminal Facilitation in the Second Degree. See People v. McKnight, 761 N.Y.S.2d 695 (3d Dep't 2003).

[2] Apparently, no one in the crowd was injured as a result of this discharge, however, Petitioner was charged with Attempted Murder in the Second Degree and Reckless Endangerment in the First Degree in relation to these gun shots.

[3] Unless otherwise indicated, all references to the NYPL are to McKinney 1998.

of NYPL §120.25.

**B.     State Trial Court Proceedings**

The Honorable Thomas A. Breslin, Albany County Court Judge, presided over Petitioner's trial proceedings. The trial began on January 12, 1998. Petitioner was represented by Peter Lynch, Esq. of the Albany County Public Defender's office.

Petitioner testified on his own behalf and did not dispute shooting Germany. However, he interposed the affirmative defense of extreme emotional disturbance. The jury determined that Petitioner did not meet his burden of proving his affirmative defense and found Petitioner guilty of the first count of intentional Murder in the Second Degree. (T at 691-92). Petitioner was found not guilty of the second count of depraved indifference Murder in the Second Degree, the third count of Attempted Murder in the Second Degree, and the fourth count of Reckless Endangerment. (T at 692- 693).

On March 4, 1998, Petitioner was sentenced to an indeterminate sentence of twenty-five years to life imprisonment for his conviction of Murder in the Second Degree. ($S^4$ at 8).

**B.     State Appellate Proceedings**

Petitioner, represented by Paul J. Connolly, Esq., appealed his conviction to the Appellate Division, Third Department, of the New York State Supreme Court. Petitioner's attorney submitted three arguments in support of the appeal: (1) that the trial court's refusal

---

[4]References preceded by "S" are to the transcript pages of Petitioner's sentencing proceedings.

to submit Manslaughter in the First Degree as a lesser included offense of Murder in the Second Degree was reversible error; (2) that the trial court committed reversible error when it overruled defense counsel's objection to the prosecutor's summation comments regarding the extreme emotional disturbance defense, and when it refused to give a curative instruction; and (3) that the prosecutor's cross-examination of Petitioner, and remarks on summation violated Petitioner's right to a fair trial.

In addition, Petitioner submitted a *pro se* supplemental brief arguing (4) that he received ineffective assistance of trial counsel because his lawyer failed to support his emotional disturbance defense with psychiatric testimony; (5) that under *Batson*[5], there was an improper juror challenge; and (6) that the sentence imposed on him was too harsh.

In a decision issued on October 24, 2002, the Appellate Division affirmed Petitioner's conviction and sentence. People v. Alston, 749 N.Y.S.2d 111 (3rd Dept 2002). Petitioner's application for leave to appeal to the Court of Appeals was denied on December 30, 2002. People v. Alston, 99 N.Y.2d 554 (2002).


**D.  Federal Habeas Corpus Proceedings**

Petitioner, proceeding *pro se*, commenced this action on December 29, 2003, by filing a Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. (Docket No. 1). Petitioner asserts two claims in support of his Petition: (1) that the trial court erred by refusing to submit Manslaughter in the First Degree as a lesser included offense of Murder in the Second Degree; and (2) that the trial court erred when it overruled Petitioner's

---

[5]Batson v. Kentucky, 476 U.S. 79 (1986)

objections to the prosecutor's misstatement of law of extreme emotional disturbance defense during summation, and in refusing to give a curative instruction. (Docket No. 1 at 5). Thereafter, Respondent filed submissions in opposition. (Docket No. 7).  Respondent, in his submissions, argues (1) that it was not contrary to Supreme Court precedent for the State court to refuse to charge the jury on the lesser included offense of manslaughter and, (2) the trial court properly instructed the jury to follow the law as given to it by the court and not the prosecution and therefore, Petitioner is not entitled to habeas relief.  See (Docket No. 7).

For the following reasons, this Court recommends that the Petition be DENIED.

### III. DISCUSSION

**A.    Federal Habeas Corpus Standard**

Federal habeas corpus review of a state court conviction is governed by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  Under AEDPA, federal courts must give substantial deference to a state court determination that has adjudicated a federal constitutional claim "on the merits." 28 U.S.C. § 2254(d); Sellan v. Kuhlman, 261 F.3d 303, 309-10 (2d Cir. 2001). The Second Circuit has stated that an "adjudication on the merits" is a "substantive, rather than a procedural, resolution of a federal claim." Sellan, 261 F.3d at 313 (quotation omitted).  The Second Circuit has also held that even a one-word denial of a petitioner's claim is sufficient to constitute an "adjudication on the merits" for purposes of AEDPA. Id. at 312-313.

Specifically, AEDPA requires that where a state court has adjudicated the merits of a Petitioner's federal claim, habeas corpus relief may not be granted unless the state court's adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

While both AEDPA and its predecessor statute recognize that a presumption of correctness shall apply to state court findings of fact, Whitaker v. Meachum, 123 F.3d 714, 715 n. 1 (2d Cir. 1997), AEDPA also requires a Petitioner to rebut that presumption by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1); LanFranco v. Murray, 313 F.3d 112, 117 (2d Cir. 2002). A presumption of correctness applies to findings by both state trial and appellate courts. Galarza v. Keane, 252 F.3d 630, 635 (2d Cir. 2001); Whitaker, 123 F.3d at 715 n.1.

In Williams v. Taylor, 529 U.S. 362, 413 (2000), the Supreme Court defined the phrases "contrary to" and "unreasonable application of" clearly established federal law. A state court decision is "contrary to clearly established federal law . . . if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Court] has on a set of materially indistinguishable facts." Id.

A state court decision involves "an unreasonable application of" Supreme Court case law if it "identifies the correct governing legal principle from [the Court's] decisions but

6

unreasonably applies that principle to the particular facts of [a] prisoner's case." Id.

Under this standard, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. In order to grant the writ there must be "some increment of incorrectness beyond error," although "the increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." Francis S. v. Stone, 221 F.3d 100, 111 (2d Cir. 2000) (internal quotation marks omitted).

B.  Petitioner's Claims

    1.  Lesser Included Offense

Petitioner's first claim is that the trial court erred when it refused to submit Manslaughter in the First Degree as a lesser included offense along with the charge of Murder in the Second Degree. However, for the reasons set forth below, the trial court's refusal to submit a lesser included offense is not a cognizable claim on habeas corpus review in non-capital cases.

Although the Supreme Court has held that the failure to submit lesser included offenses is a violation of due process in capital cases, it has expressly reserved the question of whether the rule applies in non-capital cases. Beck v. Alabama, 447 U.S. 625, 638 n. 14, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980).

In Jones v. Hoffman, 86 F.3d 46, 48 (2d Cir.1996), the Second Circuit "effectively

concluded that a claimed error in failing to include a lesser offense instruction in a non-capital case is not a cognizable claim in a habeas corpus proceeding." See Smith v. Barkley, No. 99-CV-0257, 2004 WL 437470, at *5-*6 (N.D.N.Y. Feb. 18, 2004); Lydon v. Kuhlman, 62 F.Supp.2d 974 (E.D.N.Y. 1999).

Accordingly, "since no clearly established Supreme Court precedent required an instruction to the jury as to the lesser included offense," Petitioner cannot establish that the Third Department's decision as to this issue was contrary to, or an unreasonable application of clearly established Supreme Court precedent. Smith, 2004 WL 437470, at *6. Moreover, as set forth below, Petitioner has not established that the Appellate Division's decision was based upon an unreasonable determination in light of the facts presented.

The Appellate Division noted that under New York law, a lesser included offense jury charge is required if (1) "it is impossible to commit the greater crime without concomitantly committing the lesser offense by the same conduct" and (2) "a reasonable view of the evidence . . . support[s] a finding that the defendant committed the lesser offense but not the greater.'" People v. Alston, 749 N.Y.S.2d at 113 (quoting People v. Van Norstrand, 85 N.Y.2d 131, 135, 623 N.Y.S.2d 767, 647 N.E.2d 1275); see also Harris v. Scully, 779 F.2d 875 (2d Cir. 1985).

The appeals court found the first part of the test was satisfied in Petitioner's case. However, with respect to the second part of the test, the Appellate Division held that "no reasonable view of the evidence can support the proposition that [Petitioner] shot Germany with the intent to cause serious physical injury but not death. [Petitioner's] shooting of Germany five times in the back 'presented such a transcendent risk of causing his death

8

that it readily meets the level of manifested depravity needed to establish murder under Penal Law § 125.25(2)'" Id. (quoting People v. Sanchez, 98 N.Y.2d 373, 378, 748 N.Y.S.2d 312, 777 N.E.2d 204).  In particular, the Appellate Division noted that "[a]lthough [Petitioner] testified that he could not remember what he was thinking at the time of the shooting, he neither denied that he had formulated an intent to kill nor claimed that he meant only to injure. Rather, he asserted that he 'just snapped.'" Id.

Thus, the Appellate Division concluded, as a matter of New York law, that the trial court correctly refused to give a jury instruction on the lesser included offense of Manslaughter. Id. (citing People v. DeLucia, 754 N.Y.S.2d 637 (1st Dep't 2003); People v. Frazier, 738 N.Y.S.2d 16 (1st Dep't 2002)).  Petitioner has not shown that the Appellate Division's determination in this regard was unreasonable in light of the facts presented. Indeed, it appears to this Court that the Appellate Division's decision was proper, particularly given the number of shots fired and Petitioner's testimony to the effect that he "snapped."

Accordingly, this Court recommends that Petitioner's first claim for habeas relief be DENIED.

### 2. Prosecutorial Misconduct

In his second claim for relief, Petitioner argues that the trial court failed to adequately address and remedy prosecutorial misconduct.  Specifically, Petitioner contends that the prosecutor misstated the law concerning the affirmative defense of extreme emotional disturbance during her summation.  Petitioner argues that the trial court erred by failing to sustain defense counsel's objections to the prosecutor's statements and by failing to provide a curative instruction.  In addition, Petitioner objects to the prosecutor's disparaging

comments during summation concerning the merits of the extreme emotional disturbance defense.

### a. Alleged Misstatement of the Law.

The prosecutor made the following comments during summation regarding Petitioner's affirmative defense of extreme emotional disturbance:

> MS COLEMAN: Finally, I submit to you that even if you believe that the defendant has met his burden of proof on the first two topics and you believe that this defense is real and genuine and you believe that his emotions were real and genuine, and that he acted under extreme emotions, finally you must believe that this loss of control was – and here's the big word, the one that he hates, that's going to come – reasonable. Reasonable. Admittedly, given his situation and the circumstances as he believed. So let's do that. Let's grant him that. Let's say we're in the situation and that he does believe what he believes about Tyrone and Latonya. Was it reasonable, as the law requires, for him to lose control? Was it reasonable to plug five – shots ...
>
> MR LYNCH:[6] Objection.
>
> THE COURT: Overruled.
>
> MS COLEMAN: – into Tyrone Germany's back over a fight about getting a ride from a girl? Even if he believed she was, in his words, messing around, was it reasonable for him to believe that in the first place? I mean, what can we tell him? What's reasonable? You see, there has to be – when the Judge reads you – there has to be a reasonableness requirement imposed on this standard – and there is – because, if not, then there's no end to this. I mean, because the next thing you know he could look up and say, "Oh, oh, the court clerk, I didn't like the way he looked at Latonya when he was swearing her in." Oh, reasonable. Boom. Right. "The court reporter. I didn't like the way he was sitting close to her." Boom.
>
> There has to be a reasonableness standard. And there is. There is. Under his circumstances, under any circumstances, is it reasonable to lose control in the manner he did, put five shots in the back of a fleeing, unarmed boy because he lost a fight over a girl in a car? Is that a reasonable explanation? Is that a reasonable excuse for this loss of self-control, of shooting Tyrone Germany down in the street over that? Over that?

---

[6]Petitioner's trial counsel.

10

(T. at 607-08).

The habeas court's scope of review as to claims of prosecutorial misconduct is quite limited. In order to overturn a conviction, the Court must find that the prosecutor's comments constituted more than mere trial error and instead were so egregious as to violate the petitioner's due process rights. See Donnelly v. DeChristoforo, 416 U.S. 637, 647-48 (1974); Floyd v. Meachum, 907 F.2d 347, 353 (2d Cir.1990) ("The appropriate standard of review for a claim of prosecutorial misconduct on a writ of habeas corpus is the narrow one of due process, and not the broad exercise of supervisory power.") (internal quotation marks and citations omitted); see also Tankleff v. Senkowski, 135 F.3d 235, 252 (2d Cir.1998).

Thus, to be entitled to relief, Petitioner must show that he "'suffered actual prejudice because the prosecutor's comments during summation had a substantial and injurious effect or influence in determining the jury's verdict.'" Tankleff, 135 F.3d at 252 (quoting Bentley v. Scully, 41 F.3d 818, 823 (2d Cir.1994) (internal quotation marks and citation omitted in original)). "Rarely are comments in a prosecutor's summation 'so prejudicial that a new trial is required.'" United States v. Germosen, 139 F.3d 120, 128 (2d Cir.1998) (quoting United States v. Forlorma, 94 F.3d 91, 93 (2d Cir.1996) (quotations omitted). Reversal of a defendant's conviction is warranted only where "'the statements, viewed against the entire argument before the jury, deprived the defendant of a fair trial.'" Id. (quoting Forlorma, 94 F.3d at 94).

In determining whether a defendant has suffered actual prejudice due to prosecutorial misconduct, the reviewing court considers three key factors: "the severity of

the misconduct; the measures adopted to cure the misconduct; and the certainty of conviction absent the improper statements." Floyd, 907 F.2d at 355 (quoting United States v. Modica, 663 F.2d 1173, 1181 (2d Cir.1981) *(per curiam))*; accord, e.g., Germosen, 139 F.3d at 128; United States v. Miller, 116 F.3d 641, 683 (2d Cir.1997); United States v. Perez, 144 F.3d 204, 209 (2d Cir. 1998).

In the present case, the Appellate Division concluded that "[w]hile not a model of clarity, the People's statement of the law did not constitute conduct 'so egregious as to deny [Petitioner] [his] constitutional right to a fair trial' . . ., particularly since County Court instructed the jury that it must accept the law as given to it by the court." Alston, 749 N.Y.S.2d at 704 (internal citation omitted). "Since the court's instruction to the jury clearly explained the showing required to support a defense based upon extreme emotional disturbance, a curative instruction became unnecessary." Id.

Preliminarily, this Court notes its agreement with the Appellate Division's conclusion that the prosecutor's statement was "not a model of clarity." Specifically, the New York Court of Appeals has explained that the "test is to be applied to determine whether defendant's emotional disturbance, and not the act of killing, was supported by a reasonable explanation or excuse." People v. Casassa, 404 N.E.2d 1310,1316 n.2 (N.Y. 1980). Some of the prosecutor's comments came close to suggesting that Petitioner was required to establish that the act of killing Germany was itself reasonable, which is not an accurate statement of the law.

However, as set forth above, the Appellate Division nevertheless concluded that the prosecutor's statements of the law did not rise to the level of a due process violation. This Court, whose function is to review the state court decision under the AEDPA framework,

12

finds that Petitioner has failed to demonstrate that the Appellate Division's decision in this regard was contrary to, or an unreasonable application of, clearly established federal law.

First, the trial court properly instructed the jury regarding the elements of the extreme emotional disturbance defense. (T. at 648-52). Moreover, the trial court specifically instructed the jury that they were required to accept the law as stated by the court. (T. at 622, 624-25). As this Court has noted, there is a well-established presumption that jurors follow their instructions. Barnard v. Burbary, 452 F. Supp. 2d 178, 193 (W.D.N.Y. 2006). See also Zafiro v. United States, 506 U.S. 534, 540-41 (1993) (emphasizing that prejudice "can be cured with proper instructions and juries are presumed to follow their instructions") (internal quotation marks omitted)); United States v. Downing, 297 F.3d 52, 59 (2d Cir.2002) (stating that "[a]bsent evidence to the contrary, we must presume that juries understand and abide by a district court's limiting instructions.").

Second, Petitioner has not established that he "'suffered actual prejudice" as a result of the prosecutor's comments. Tankleff, 135 F.3d at 252. The evidence (particularly the number of shots fired and the reasons proffered for the alleged emotional disturbance) clearly supported the jury's conclusion that Petitioner had not met his burden with respect to the extreme emotional disturbance defense. See, e.g. People v. Phillips,589 N.Y.S.2d 924, 925 (2d Dep't 1992) (holding that evidence that defendant was "angry and agitated after a fight with the victim" was insufficient to establish extreme emotional disturbance); Zamora v. Phillips, No. 04-CV-4093, 2006 WL 2265079, at *7 (E.D.N.Y. Aug. 8, 2006) ("Acting out of anger or jealousy, as New York courts have consistently held, does not entitle a defendant to an extreme emotional disturbance instruction.").

      **b.**      **Disparaging Comments Regarding Affirmative Defense**

In addition to the comments discussed above, the prosecutor also made the following argument during her summation:

> Remember he told you – I didn't say that – he came out with the stuff about the law library– he's in the law library reading cases. Reading cases. He said that. I'm not saying he did a good job of it, I'm not saying he came up with a good defense. I'm saying he learned that five shots in the back kind of throws your self defense out the window. Even John Alston can figure that out. Got to come up with something else. "Oh yeah," he said, "I read cases on extreme emotional disturbance." That's it.

(T. at 598). Moreover, the prosecutor later suggested that the affirmative defense was "concocted" and called it a "bogus eleventh-hour defense." (T at 607, 613). Petitioner's trial counsel did not object to any of the foregoing statements.

The Appellate Division concluded that these "alleged errors were not preserved for [appellate] review" due to the failure of trial counsel to register a contemporaneous objection to the allegedly improper statements. Alston, 749 N.Y.S.2d at 114 (citing People v. Nuccie, 441 N.E.2d 1111 (1982)).

The Second Circuit has held that New York's contemporaneous objection rule is an "adequate and independent" state ground for procedural default in cases where defense counsel has failed to object. See Velasquez v. Leonardo, 898 F.2d 7, 9 (2d Cir.1990) (violation of New York's contemporaneous objection rule is an adequate and independent state ground); see also Garcia v. Lewis, 188 F.3d 71, 79 (2d Cir.1999); Jones v. West, 473 F. Supp.2d 390, 422 (W.D.N.Y. 2007).

"[F]ederal courts 'have observed and deferred to New York's consistent application of its contemporaneous objection rules.'" Garcia, 188 F.3d at 79. As such, a "state prisoner who fails to object to a jury instruction in accordance with state procedural rules procedurally forfeits that argument on federal habeas review." Reyes v. Keane, 118 F.3d

136, 138 (2d Cir.1997).

Accordingly, this Court concludes that the procedural rule relied upon by the Appellate Division in this case is "firmly established and regularly followed" in New York and therefore constitutes an "independent and adequate" state ground, which renders Petitioner's claim procedurally defaulted.  See Velasquez, 898 F.2d at 9.

A petitioner may obtain habeas review of an otherwise procedurally defaulted claim only if he can show "cause for the default and prejudice attributable thereto, or demonstrate that failure to consider the federal claim will result in a fundamental miscarriage of justice." Harris v. Reed, 489 U.S. 255, 262 (1989)).

In order to show a "fundamental miscarriage of justice," a petitioner must demonstrate "actual innocence." Calderon v. Thompson, 523 U.S. 538, 559 (1998); see also Washington v. James, 996 F.2d 1442, 1447 (2d Cir.1993).  Whether there is cause "ordinarily turn[s] on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." Coleman v. Thompson, 501 U.S. 722, 753 (1991) (quoting Murray v. Carrier, 477 U.S. 478, 488 (1986)).

Petitioner has not alleged any facts that would constitute cause for default. Nor has he demonstrated that he has suffered actual prejudice resulting from the prosecutor's comments.  As set forth above, the evidence clearly supported the jury's determination and Petitioner has not established that the prosecutor's statements, viewed against the entire argument before the jury, deprived him of a fair trial. See Forlorma, 94 F.3d at 94. Finally, Petitioner has not come forward with any new evidence to support a claim that he is actually innocent of the charge on which he was convicted. Accordingly, the procedural

default bars federal review of Petitioner's claim challenging the alleged prosecutorial misconduct. This Court therefore recommends that Petitioner's second claim for habeas relief be DENIED.

## IV. CONCLUSION

For the reasons stated above, the Court recommends John Alston's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 be denied, and that his petition be dismissed. Because Petitioner has failed to make a substantial showing of a denial of a constitutional right, I recommend that a certificate of appealability not issue. See 28 U.S.C. § 2253(c)(2) (1996).

Respectfully submitted,

Victor E. Bianchini
United States Magistrate Judge

DATED:     June 27, 2007
           Syracuse, New York

**V. ORDERS**

Pursuant to 28 USC §636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within ten(10) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, as well as NDNY Local Rule 72.1©.**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT ORDER BY THE DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d. Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988); see also 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and NDNY Local Rule 72.1(c).

Please also note that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material which could have been, but was

not, presented to the Magistrate Judge in the first instance. <u>See</u> <u>Patterson-Leitch Co. Inc.</u> <u>v. Massachusetts Municipal Wholesale Electric Co.</u>, 840 F.2d 985 (1st Cir. 1988).

SO ORDERED.

June 27, 2007

_____
Victor E. Bianchini
United States Magistrate Judge